All right, we'll let the next group come forward and then I'll call it out. All right, we're ready for the next case. Case number 22-30704, Melancon v. Lafayette Gen Med Ctr. I apologize if I got the name wrong. And we'll hear from Carl Bernard. Good morning. May it please the Court, again, my name is Carl Bernard. I represent the plaintiff appellant in this matter, Ms. Angela Melancon. We have filed this appeal, Your Honors, because we believe that the lower court committed reversible error when granting the 12B6 motion to dismiss filed by Defendant Appellee Lafayette Gen Med Ctr. I pray as this Honorable Court will reverse and remand this matter for further proceedings. The issue before this Court is whether the lower court followed the law governing the adjudication of a Rule 12B6 motion to dismiss. Specifically, did the lower court accept the well-pleaded facts outlined by the plaintiff and construe those allegations of fact as true or in a light most favorable to the plaintiff prior to making its ruling? We believe that the court did not do so on three separate occasions. First, when analyzing or adjudicating whether or not the plaintiff suffered an adverse employment action. Secondly, when determining whether there was a causal connection between the alleged adverse employment action and the protected activity. The time between the adverse employment action and what happened to her, the reprimand, was like, I understand, four months. Is that correct? That's not correct, Your Honor. What is it? The defendant and the court, the lower court in this matter, focused in on the written reprimand that she received in July, which was four months after she engaged in protected activity. However, prior to receiving the written reprimand, in between the two events, she was essentially targeted by her supervisor and the individuals that she supervised. She was accused of all types of workplace violations in terms of policy and procedure, engaged in bullying, workplace harassment, verbally abusive behavior, belittling members of the security staff, which she supervised. She not only was essentially belittled by, or at least what we believe, adversely affected by her supervisor, but she was rendered incapable of supervising the 45 security officers that she was in charge of supervising simply because of the activity. And, Your Honor, I want to point out to the court that it's our belief that the court, in determining whether or not there was an adverse employment action, applied the wrong law. Good law, but not the right law in this particular case. When deciding if the plaintiff suffered an adverse employment action, the lower court stated the following. On page nine of the opinion, plaintiff did not allege that the reprimand resulted in any consequence detrimental to her employment. She did not allege that she suffered a demotion or loss of pay or benefits because of the reprimand. Page ten, none of the alleged accusations or the written reprimand resulted in affecting, or action affecting a term and condition or privilege of employment. Good law, but not the right law in this case. That law is applicable to claims of discrimination, not a claim of retaliation. Under the law of the jurisprudence in this court, the United States Supreme Court, regarding retaliation, the law is pretty clear that an adverse employment action in the retaliation context is an action which might dissuade a reasonable employee worker from making or supporting a charge of discrimination. In other words, would a reasonable employee keep his head down and his mouth shut if, in fact, faced with the same constellation of surrounding circumstances as the plaintiff in this particular case? We believe at this stage in the proceeding, it was at best premature to dismiss this case on a 12B6 motion because according to the seminal case dealing with retaliation, context matters. What may be retaliation in one case may not be the same, may not be retaliation in another case. As this court is aware, the Supreme Court used, I think, a terrific analogy by saying that if you change a worker's job schedule or their report schedule, and if this may not be an adverse claim for other employees but for a mother that has school-aged children, it may be an adverse employment action. And we believe, Your Honor, based upon the allegations alleged in the petition, that we have alleged enough at least to engage in discovery, to find out if, in fact, that there is evidence to support the allegations in the plea. Now regarding causal connection, the court stated that because the written reprimand and alleged accusations of various transgressions do not evidence an intention to act because of plaintiff's alleged reporting of Bernard's conduct, no relation, proximity is the only conceivable connection between plaintiff's actions and subsequent reprimand and accusations. That is not a fair reading of plaintiff's complaint. It is clear that Ms. Melancon, a 30-year employee prior to this, we'll call it, event, she was a celebrated worker there. She progressed through the ranks from a security officer until, at this particular time, what's relevant for this case, where she was supervising 45 security officers at five of defendants' health care facilities. But this was a new supervisor, right? Yes, a supervisor that she trained. Okay, but that was new. Yes, Your Honor. So what she's experienced under – I've had the experience of some supervisors are really nice and some aren't in my life. So that isn't necessarily caused by her complaint about the person's racial comments, racist comments. Well, the supervisor was, in fact, the supervisor when she complained. It was not a different supervisor. No, I understand, but what I'm trying to say is you're saying for 30 years she was kind of loved and then not, but she had a new supervisor. That's all I'm saying. Does that not have – is that not relevant here? No, not at all, Your Honor, because the supervisor that – the new supervisor which the court speaks of is a supervisor that Ms. Melancon trained. She trained him on how to perform his own duties and responsibilities. He celebrated her prior to the March 4, 2021 event. After she essentially engaged in her federal and state-protected right to oppose discriminatory conduct in the workplace, well, all hell broke loose. I mean she went from being celebrated to tolerated in just in a week's time. And all we're asking, Your Honor, is that based upon the allegations that have been pled at this stage of this proceeding, we believe that the district court was premature in dismissing this particular claim without engaging in discovery so that we can find out if there's any evidence to support Ms. Melancon's claim. Now, the third part, Your Honor, deals with – the question that you provided in the complaint with respect to what happened in this four-month period that you says fills in the gaps. Does the complaint tell us who made those accusations, where they were made, how often they were made, and what context were they made? No, not at this point. What it does say, it says who made the allegations. In order for the allegations not to be merely conclusory, aren't you required to fill in the detail in your complaint? Your Honor, we did not just say she was treated unfairly. We did not just say that, you know, they did her wrong. We enumerated what happened. But the they you're talking about is a collective they. We don't know who they were, when they said it, was it at the water cooler, was it in the formal setting. We don't know any of that from your complaint, do we? Yes, Your Honor, you do not know that from my complaint. This is a – a plaintiff comes to my office and you get the information and you place it in the complaint. And I've been practicing law long enough to know I don't put anything in a complaint that I don't feel confident in that I can actually prove. And thus, what we're asking to do – because what we did allege is that she suffered various acts repeatedly and routinely. Can you give us a cite to the ROA as to what you think is the most detailed part of your complaint? The most detailed part of the complaint? No, you're just – what you're responding to Judge DeGravo on, you're saying we said this, this, and this. Yes. I'm asking where. Yes, ma'am. If you can't find it and want to wait until your rebuttal, you can tell us then. It's in the – we don't have much in the record, Your Honor. It's just a petition for damages, and it's paragraph 22 through – now, where it is in the record, I can't, but it's paragraphs 22 through 28, I believe. Because the only – only pleadings other than the memos that have been filed back and forth between the parties is a petition for damages. Yeah, you put some of that in your brief, is what I meant. Yes. Okay. And in terms of the claim for intentional or negligent infliction of emotional distress, Your Honor, I just want the court to realize or at least to, you know, I guess put your boots on the ground. That's page six of your brief. Yes, Your Honor. I'm sorry. Go ahead. That what you have here is a security officer. She's now the manager of five of the defendants' health care facilities. She's over 45. She has to manage and supervise 45 individuals. After this, we'll call it an intervening act where she went from being celebrated to tolerated, now she cannot do her job because not only is her boss essentially criticizing her about everything in the workplace policy, but the folks that she is now supervising, that she is required to supervise, she is unable to because they're saying that she's bullying them, that she's complaining even about their sexual orientation. Their size, whether or not they're fat or not. All types of things have gone on to the point where now Ms. Malonso had to take a leave of absence, I think either 30 or 60 day leave of absence to deal with the emotional stress and strain that she was under as a security officer within defendants' employ. And so, Your Honor, it is my humble position that this case should be reversed and remanded and we should be allowed to at least engage in discovery to find out if there are allegations to support the, to bolster plaintiff's claims. Okay. Thank you. You've saved time for rebuttals. All right. We'll hear from Andrew Halverson. Thank you, Your Honors. And one quick side note on pronunciation. Lafayette is the only place in the world that says it like that instead of Lafayette. So I just want to kind of make a quick note about that. But anyways, I do want to start off by responding to Mr. Bernard's couple of factual allegations that appear nowhere in the original or the amended complaint. Mr. Bernard stressed over and over that Ms. Mlancon was incapable of now managing her employees due to this concerted effort by her supervisor to, you know, have the employees harass her. That's nowhere. That's not in the complaint one iota. Can I interrupt for just a second, Mr. Halverson? Yes. I'm looking at paragraph 22 of the complaint. Yes. And this is where Mr. Bernard specifies what happened between the incident and the formal reprimand. And it says that CIMA, that is the supervisor, and members of the defendant's security staff began regularly and routinely accusing Ms. Mlancon of the following. Treating members of security unfairly, engaging in bullying, workplace harassment, verbally abusive behavior, belittling members of the security staff, threatening members of the security staff, causing workplace conflict, leaking confidential information, and engaging in retaliatory type conduct. Now, if that's accepted as true, isn't that an adverse employment action? I disagree on multiple items. One, I think the discussion you had with Mr. Bernard about the lack of specificity is on point. It is how is – I think for – as I was thinking about this and concerning is how are these – how is Ms. Mlancon learning about this? Are these complaints made by employees, her staff, complaining to Mr. Donnie Seamon and Mr. Seamon's then counseling her about it? That's not stated. Or is she eavesdropping? Is she overhearing chatter at the water cooler at the break and they're talking amongst each other, complaining about how she's treating them? We don't know that. That's not in the complaint. I think that's an important point that needs to be in the complaint in order for there to be some consideration as to whether this quote-unquote series of events could be an adverse employment action. Then two, the details itself. In what ways is Ms. Mlancon accused of mistreating staff? In what ways is she accused of bullying? What's she doing? What's she saying to these employees that – or supposedly saying to the employees that is constituting bullying? The only specific thing she actually alleges here is that she's accused of threatening to terminate her employees. That's it. But not who, not when, not how often. There's a complete lack of specific detail here to the point that all this – Well, to the discovery point is Ms. Mlancon experienced this. Ms. Mlancon claims to have endured significant emotional damage to the point that she was, as she stated in her brief, living in hell. Or in a living hell. I'm sorry. I misquoted it. So she knows what is being said about her, or at least she purports to know what's being said about her. Why does she need discovery from Lafayette General, LGMC, to go figure out what's said to her? Either she heard it or she didn't. It happened. It didn't. She doesn't know or she does know. I mean discovery on your side directed to her. We don't need discovery. The point here – You seem to be saying that these allegations here are somewhat mysterious because she doesn't provide specifics. But it's Ms. Mlancon bringing the suit against LGMC. Mr. Bernard, or at least Ms. Mlancon in her brief, talks about putting LGMC on notice, notice of a claim. Well, if there's no – she doesn't report that she made complaints to LGMC, so I don't know this to be true. But it's certainly not a complaint that LGMC knew what was going on. But the point is that she is bringing the suit against my client. And if she's going to put – if she's going to bring that suit, she has to fill in the details. She knows what gave her the living hell, so she should at least list some of that. She doesn't have to list everything but list something. But why isn't this the something, this page six of the blue brief? Well, it's specific to paragraph 22 of the amended complaint is there's just no detail there. It's – not to repeat myself, but really what was said, how was said, how did she learn about it, what she counseled about it, did she complain to LGMC about it? None of that. Well, we know complaints aren't supposed to be lengthy and full of every detail. So what is it that you think is missing that should have been there, assuming arguendo all these bad things happen? Okay, yeah. Well, I take issue with the point here that Mr. Malonson is trying to draw out is can a series of events be an adverse employment action for retaliation? I think maybe there can be. Ms. Malonson did not cite a single case to support the proposition. I could not. As much as I think I'm a good researcher, I could not find a case myself. But I think what's lacking in this case is a couple of things. One is the culminating event here was a write-up, was a written reprimand, a written warning, which this Court and the Western District who follow this process. A written reprimand in the context of all of these items which preceded the written reprimand, right? Well, I guess assuming that if Mr. Seamon knew what was going on, which I guess we have to make that assumption here. Well, no, she's accused of doing all of these things. Well, she's – I would disagree on one point that the complaint just says, if you go back to paragraph 21 preceding it on ROA 71, she alleges that Mr. Seamon – that all this is going on with his approval, not necessarily at his direction. What 21 says is Seamon and several members of her staff – Seamon and several members of Ms. Malonzo's staff with Seamon's approval began openly harassing. So I'm reading that to be Seamon and other members of her staff were harassing the plaintiff. And I would argue – my point here is – and I think what Ms. Malonzo is trying to do is attribute all this is going on and lay it at the feet of Mr. Seamon that he's directing this. He's the puppeteer of the staff directing a concerted effort against Ms. Malonzo. But I don't read – I don't think we can infer that from that at all. Well, now that's a conclusory statement though if we don't know how he directed them or approved them or whatever. So if you have a colleague who keeps saying, you're a jerk, I hate you, you're a jerk, I hate you, how do we know that the supervisor said, hey, go tell her she's a jerk and you hate her? How do we know that and that's not pled? Is that your point? That is. It's a gap. And I think that's where – it's Ms. Malonzo's burden, duty in filing a lawsuit to make that connection, to not have the LGMC wonder, have to go investigate, not to have the courts wonder and fill in the gaps for her. It's her burden to set forth well-pleaded facts that states a claim. And the 21, paragraph 21 and 22, I don't think cuts it. There's some salient details that are missing. But then two, and I think more to your point, Judge, is the issues here, we were – I was utterly confused as to what Ms. Malonzo was raising. It looked like a harassment claim disguised as a retaliation claim. And even here on appeal, the issue that Ms. Malonzo presents is disguised as a collateral attack on whether or not – to the merits. It's the way that Ms. Malonzo couches or that the pleading has couched things that was very frustrating and wasn't clarified until way late. But my point is, is that we raised an issue, hey, it looks like she's pleading harassment, but it's not harassment under Title VII. Ms. Malonzo finally concedes that point later on. So here what you really have is workplace bullying that is not covered or governed by Title VII or 42 U.S.C. 1981. And so then why should this not state a claim? And why should the gates of discovery not open is because then I think that runs sort of contrary to two principles that this court has enunciated for decades, which is Title VII is not a general code of civility, and courts, federal courts and this court, are not HR departments, questioning and examining and reviewing every personnel decision that goes on in the workplace. I think if Ms. Malonzo's claim is permitted to proceed past the pleading stage, that's exactly what's going to happen, is these trivial workplace disputes, even if she's being, you know, called names, you know, not based upon a protected characteristic. Let's say, you know, yeah, she's being accused of, wrongly, of threatening employees with termination. That's not – that's a triviality of the workplace. It's unfortunate if she has to go through it, and I can understand if that causes some burden on her, but it's not burden that is actionable under Title VII, because then it really does convert a lot of workplace disputes into federal claims that Congress, by way of 1981 and Title VII, never envisioned, and this court has routinely disallowed. But then two – well, three. Ms. Malonzo argues that all this bullying or these accusations, these claims of derision that she now argues in her reply, all this she argues to say that a reasonable employee would be dissuaded from making complaints to the employer or to the EEOC about misconduct occurring under Title VII. And I would say that the very fact that we are here today undermines that entire position. Because let's look at the timeline. March, she makes her complaint about, you know, her co-worker or her subordinate making the slave owner comment, yes, amassa, all that. She makes a complaint. She's – in her words, she believes she's harassed and bullied at the direction of Don – of Mr. Seamon. Okay, let's assume that to be true. She's written up. She complains even after that write-up. What does she do? She files a lawsuit. She doesn't go to the EEOC. She doesn't go to her employer about this. She files a lawsuit in federal court. We responded and let her know by way of our – to her original complaint, filed a 12B6 saying your Title VII is not properly before the court. You did not exhaust your administrative remedies. What does Ms. Malonzo do? She goes to the EEOC, files her charge, gets a right to sue. Is that – those are the circumstances of the amended complaint? Yes. That's how the amended complaint arose. And I would also – one other point that Mr. Bernard brought up is he's talking about – and I guess he's probably got a very active practice, limited time. Sure. But the – our 12B6 motion and the judgment that is before the court, that is under review before the court, was not the first time we brought this issue up of an adverse employment action, not the first time that we said you didn't do enough. We brought these arguments up in response to Ms. Malonzo's original complaint, and she barely modified the amended complaint. She added just a few things about Mr. Simon being – The first judgment of the court, district court, that said you need to amend the complaint, was that based on the fact that there was no jurisdiction because there was no EEOC complaint? Is that – was that the reason for the courts saying you need to amend your complaint? It was actually – let's say it this way. I don't know, but here's – the procedure that happened was Ms. Malonzo filed her amended complaint – her original complaint. We filed Rule 12B6. Right after that, Ms. Malonzo did not even file an opposition. In response to the 12B6, that's when she filed the amended complaint, recognizing that the charge element was missing, the exhaustion. So the court, in response to Ms. Malonzo filing her amended complaint, issued a memorandum ruling saying, okay, we're going to let you amend. We're going to approve this amendment, if you will, because we hadn't formally answered. So procedurally, I don't think Ms. Malonzo had to seek leave of court to go file that amendment. So the court just said 12B6 is now moot. We've got an amended complaint because now the amended complaint supersedes the original. And so now it's a clean slate. Let's start from this point. So I think to the question that I believe you're asking is the court originally and the magistrate judge did not even consider original 12B6. And so my question is should Mr. Bernard be given a chance to amend his complaint to solve the deficiencies that you've raised? And LGMC and I say no because this is now Ms. Malonzo and Mr. Bernard were made aware of the deficiencies. But not by way of the judgment of the court. Not by way of the judgment. You know, granted, for sure. But it's not like these are new to Ms. Malonzo either. And if there's a there there, I think we would have probably seen it as well in some way. You know, Mr. Bernard talks about Ms. Malonzo was incapable of supervising employees. Today's the first time we heard that. In no time in the last 18 months has that ever been talked about or mentioned in one way, shape, or form. So my point is just like we, LGMC, raised issues that were beyond the pleadings and that ended up not being an issue at all in the case. You know, the point being Mr. Seamon's race was incorrectly pled or alleged in the amended complaint, him being African American, when in fact he's white. We raised that issue. We alerted the court and said, hey, that's wrong. And we took the sort of, not the risk, but, you know, we knew we were alleging things outside of the pleadings, sort of an improper procedural. Ended up not being an issue. But the point is, and the point I'm trying to make is, I think if there's a there there, it would have appeared, you know, somewhere, at some point, before the district court, before here, to say, hey, I've got more. Let me have an opportunity to do that. But I haven't heard that from Mr. Bernard or Ms. Malonzo yet in this case. So respectfully I would say he should not be, Ms. Malonzo should not be granted another opportunity. And so ultimately, and the last point I have here is really about, it's really just a reiteration of the discovery point, is Ms. Malonzo knew or has ideas of what was being alleged against her, has ideas of what was, what allegations or what she's hearing about her are wrong. She knows the details. She was there. Date, time, place, names, who, what, when, where, why. She doesn't need to discover that from LGMC. And if she does do it, at that point, we will go ask her questions because we will be learning about it for the first time. But it's not our burden to go fish that out of her. It's actually her burden to present that to us so that we can then go engage in proper discovery for that. Oh, one procedural point, and just to kind of note it, is this whole issue about that Ms. Malonzo raised about context matters. We raised the point in our opposition brief to the court that Ms. Malonzo, in essence, waived her argument with respect to whether she properly pled an adverse employment action because she didn't really discuss it. She didn't analyze it. She didn't explain her position. She gave a one statement. The complaint is clear that she did it, essentially. I'm paraphrasing now. But it isn't until the reply brief to this court that she raises this argument under Burlington Northern v. White that context matters. I went back and looked through her, all of her filings. That case did not appear anywhere. The phrase context matters did not appear anywhere. And so we take exception to the notion of we think that Ms. Malonzo has plainly waived that argument if it's separate and apart by waiting until the reply brief to raise it. And then, as well, there's general waivery issues because she didn't really brief the matter to this court. So I just wanted to kind of note that because I see it here on my record. But at the end of the day, Ms. Malonzo advances conclusory allegations of harassment. But the harassment is not actionable under Title VII. She admits that. So this becomes a trivial workplace dispute, which Title VII and 1981 are not general codes of civility. It's just plain old not actionable, even if she properly pled it. Even if she's got enough detail in there, it's just not appropriate under Title VII. She has failed to state a claim for retaliation because she did not plead that she experienced an adverse employment action. The culminating event was a written warning, which Mr. Bernard has not mentioned but I don't think Ms. Malonzo has disputed, is not in and of itself an adverse employment action. So how does— She's not denying that she— She's not denying, yeah. She's accused of in that written— Right, yeah. I'm not articulating it. She's not denying it at all. And then really what Ms. Malonzo is arguing is individually, nothing rises to the level of the Title VII claim. But as a group, in the aggregate, it does. But there's no case to support it. The case that she—principal case she relies upon, the Burlington Northern case, doesn't support it either. And we haven't been able to find a case. So in conclusion, LGMC, Lafayette General, prays that this court affirms the district court's dismissal of Ms. Malonzo's amended complaint with prejudice and no further opportunity to amend. Thank you. Thank you. We'll hear rebuttal. Thank you. Just a brief response, Your Honor. Significantly, a motion for failure to state a claim should be read in conjunction with the Federal Rules of Civil Procedure Rule 8, which only requires a plaintiff to provide for a notice of what the claim is and the ground upon which it rests. Thus, to survive a 12B6 motion to dismiss, the plaintiff is only required to plead adequate facts to state a claim to relief that is plausible on its face. This is a notice pleading—the law is notice pleading, not fact pleading in Louisiana. But in Federal court, it's notice pleading. And the plaintiffs were placed on notice. But the law is really clear in Federal court that your allegations of fact cannot simply be conclusory, right? And, Your Honor, I humbly suggest or respectfully suggest that they're not conclusory. I think you can read someone, you know, like beauty, it's in the eye of the beholder. You can look at the facts one way, like my opponent has, and just says they're all the conclusory facts. But I think if you look at the pleading as a whole, she is outlining at this stage, at the beginning stage, what she suffered as a result of exercising her Federal and state-protected right to oppose workplace discriminatory conduct in the workplace. In terms of the EEOC, Your Honor, I just want to address, you know, obviously I do this type of work quite a bit. The EEOC is a different body than it was, say, 15, 20 years ago. They're understaffed, underfunded. Oftentimes when we get a case from a plaintiff, they may have some state law claims, some tort claims involved. And so before the EEOC gives a right to sue, we end up filing the lawsuit just to preserve the state law claims, which toll in a year's time. And so when the case was filed, we had not received a right to sue letter. The EEOC charge that the plaintiff, or rather the opposing counsel, mentions in his argument, that was the second EEOC charge that she filed. Not the first, the second EEOC charge. And so once we got the charge, or rather the signed charge or the right to sue, we were in business. But we did sue not only under Title VII, but also under 1981, which does not require that you go through the EEOC in order to file a claim for retaliatory conduct. Also, the plaintiff, or rather the opposing counsel, argues that the first time he heard the argument that she was incapable of doing her job is here in the courtroom. You know, that's argument. The 12v6 motion is relegated to the pleading. The pleading states that she is a supervisor over 45 individuals, and members of her staff are now turning against her. It's laid out in the pleading. I've read it. It's in there. And to state that because the obvious is not stated, that somehow this is new argument and we've waived an argument, I mean, if your boss is coming down on you and the people that you are supervising are now complaining about you, I think it's pretty self-evident that Ms. Melancon's job has now become difficult at best. And so, Your Honor, all we're asking for and having, like I said, been around the bend a little bit, I don't know how this case is going to turn out at summary judgment because we always get those pleadings. But at this stage, the plaintiff should be allowed to engage in discovery to ferret out the claims that are alleged in her petition for damages. Thank you. Thank you. We appreciate both sides' arguments. The case is now under submission, and we're going to take a short break.